SUBMARINE ROCK-BREAKING CO. v. SUBMARINE CO. et al.

(Circuit Court, D. New Jersey. December 27, 1911.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SUBAQUEOUS ROCK-BREAKER.
    The Rowland reissue patent, No. 12,933 (original No. 907,407), for a subaqueous rock-breaker, comprising the combination of a vertically disposed tube having closed side walls, a rock-breaking chisel fitted to move through the bottom thereof and having an inner headed end, means for maintaining air pressure under the head of the chisel to exclude water, a hammer adapted to be reciprocated in the tube, and means for raising the hammer and dropping it upon the chisel, was not anticipated and discloses invention of a meritorious character, being more effective than any device of the prior art; also, *held* infringed.

In Equity. Suit by the Submarine Rock-Breaking Company against the Submarine Company and others. On final hearing. Decree for complainant.

Edward C. Davidson, for complainant.
James & Malcolm G. Buchanan and Coale & Hayes, for defendants.

CROSS, District Judge. There are brought to the attention of the court by the pleadings in this case questions as to the validity and infringement by the defendants of reissued letters patent No. 12,933, dated March 30, 1909, to Charles L. Rowland, upon an application therefor filed February 19, 1909, which patent is now owned by the complainant.

The defendants attack the validity of the patent, but substantially admit that, if valid, it has been infringed. The patented device is called a "subaqueous rock-breaker." The patent contains 13 claims, of which Nos. 1, 2, 5, 7, 8, 10, 11, 12, and 13 are in issue. It is un-

necessary to set them forth at length, as one of them, for instance No. 7, will sufficiently illustrate their general character:

"A subaqueous rock-breaker comprising the combination of a vertically disposed tube having closed side walls, a rock-breaking chisel fitted to move through the bottom thereof, and having an inner headed end, means for maintaining air pressure under the head of the chisel to exclude water, a hammer adapted to be reciprocated in the tube and means for raising the hammer and dropping it upon the chisel."

All of the claims set forth a combination of elements.

The process of breaking and crushing rock under water by drilling and blasting is old; but the operation is both difficult and expensive when the water is of any considerable depth, and naturally becomes more difficult and expensive as the depth of water increases. Other means for breaking submerged rocks were also shown in the prior art. For instance, one Lobnitz obtained a British patent in 1886 for breaking up rock either on land or under water. He employed a heavy and powerful chisel-pointed ram. This ram, fitted in vertical guides, was operated by machinery, such as is used in driving piles. He suggested that the "cutters or heads," as he called them, might be separate from, and so held as to be struck by, the ram, but he neither showed nor described how it might be done, and in an issue of "Engineering" dated January 9, 1903, his device is shown, as in his patent, to consist of an immense bar of steel with a cutting end, from which it may be inferred that the art, in all the years between 1886 and that time, had not been advanced by the suggestion above referred to. His construction, moreover, had manifest disadvantages. A considerable part of the force of the blow was lost when the ram-like chisel was dropped or propelled through deep water. Again, it was difficult, under such conditions, to make the chisel give successive blows upon identically the same spot, and then, too, after the rock had become more or less broken, any subsequent blows of the chisel falling, as they naturally would, upon the pieces of broken rock, lost much of the effectiveness which they would otherwise have had. The evidence also discloses an apparatus used by one McSpirit, which, however, was not materially unlike that of Lobnitz. McSpirit used a long chisel, one end of which rested upon the submerged rock, and the other, which received the blow of the hammer, extended above the surface of the water. The use of this instrument is open to the same objections as that of Lobnitz. Furthermore, the evidence shows that it could only be used successfully in comparatively shallow water, and even then it was frequently broken. McSpirit himself says that he had "lots of breakages," notwithstanding the chisel was not used upon hard rock.

The prior art also discloses a patent to one Coffey, No. 657,515, of September 11, 1900, and the reissue thereof, No. 12,501, of June 26, 1906, for a subaqueous rock-breaker. In this patent the chisel, which is heavy and generally impelled by its own weight, moves in a caisson which is kept free from water by forcing compressed air therein. Coffey simply took the old heavy rock-breaking ram or chisel of the prior art, and provided means whereby the resistance of the water

to the blow was obviated. This gave to the Lobnitz type of chisel more effectiveness in deep water. But although Coffey's invention was an improvement upon the art, it did not obviate all of the objections to Lobnitz and McSpirit. Broken rock would still interfere with the force and effectiveness of the blow. A machine of that character did considerable work in New York and Boston Harbors, concerning which Coffey himself says:

"We demonstrated that the effectiveness of the direct type of rock-breaker had been increased by the addition of the pneumatic caisson, but that its efficiency on hard rock, of the character met with in Boston Harbor, was not yet sufficiently great to make it commercially successful."

And another witness, who was the master of the dredge upon which the Coffey apparatus was installed and present when it was operated in Boston Harbor, says that it did not give satisfactory results, and subsequently, in explaining more at length its deficiencies, says:

"The caisson was first set on a range, and then lowered down on the bottom. We would hoist the hammer, and let it drop on the rock, and the average cutting would be a foot and a half below grade. We found that, after we have gone two or three feet in the rock, the broken rock would be piled up so much inside the caisson that we would lose the force of the blow; that while working on a flat bottom, and while working on the edge of the ledge, the caisson would keep on sliding till it got down off the ledge eventually. We did actually break some rock, but we couldn't make required grade. We left so many points that a dipper dredge could not dig it at all."

This witness adds that the shock of the chisel, which weighed about 10 tons, was so great when it fell that at times it broke the caisson. He detailed other practical objections to its working, but it is unnecessary to specify them. It is sufficient to say that it clearly appears in the case that the Coffey device was not operatively successful, and the same is true of an apparatus shown to have been used by one Ross.

The advantages and disadvantages of several of the earlier types of subaqueous rock-breakers was summed up by Coffey as follows:

"The advantages of the Lobnitz, Ross, and Luther machines, in which the rock-cutter bar or chisel is dropped directly on the rock, are, first, all of the energy of the moving weight or mass, less the water resistance, goes directly into the rock to be broken. Another advantage is extreme simplicity; there being only one moving part. The disadvantages of these machines are, first, as the breaking proceeds, the chisel on being dropped has to first penetrate the rock already broken before reaching the solid rock beneath which is being attacked. The passage of the chisel point through this broken rock absorbs a large additional amount of energy from the falling mass, thus reducing the effectiveness of the blow upon the solid rock, and, as the thickness of the layer of broken rock resting on the solid ledge beneath increases, the loss of energy becomes correspondingly greater. The practical effect of this is that in average work machines of this type cannot effectively break a layer of rock exceeding three feet in thickness. This action is very clearly illustrated in Fig. 6 of the Lobnitz patent. The great disadvantage in being enabled only to break a layer three feet thick lies in the increased cost of dredging. For instance, where the cutting on a ledge is six feet, two separate passages of the rock-breaker are necessary, and also two passages of the dredge to remove the débris. Another disadvantage of this type lies in the fact that, to reduce the water resistance to a minimum, the falling weight or chisel bar must be put into a long slender form, resulting in practice in much breakage and bending of these chisel bars."

It will be noticed that the foregoing answer of Coffey does not embrace his own device, which, as already appears, had troubles peculiar to itself. There are many other citations from the prior art which are claimed to anticipate the patent in suit. They are, however, not deemed worthy of special discussion, since they relate one and all to nonanalogous arts, such as pneumatic drills, devices for filling teeth, riveting, dressing, or chipping stone, ditching machines, well-diggers, etc., all of which, it may be assumed, met and overcame some problem or problems incident to the particular work for which they were designed, but did not suggest a successful device for breaking hard rock located under deep water.

Turning now to the patent in suit, the specification in a general way discloses the purpose of the patent as follows:

"This invention relates to subaqueous rock-breakers in which a weight or hammer traveling in a vertical guideway, caisson or tube acts upon a rock-breaking chisel point or wedge that rests on the rock to be broken.

"In the apparatus constructed in accordance with this invention the device, having the rock-breaking chisel, point or wedge, and that is acted upon by the hammer, is carried at the lower end of the guideway, caisson or tube and has a movement, independently and longitudinally thereof. One advantage of such an organization is that, when the blow is struck by the hammer, the caisson is not subjected to shocks and strains which would tend to disrupt its joints, or to break away from its end the rock-breaking device were it rigidly attached thereto. Aside from this, the invention comprises other features of novelty hereinafter set forth in detail."

It will be seen from the foregoing that, in operating the device of the patent, the hammer is dropped upon a chisel or tool, the sole function of which is to cut or break the rock. The chisel passes through the bottom of the caisson or tube and rests at all times upon the rock, while the caisson or tube, which guides a hammer, which is independent of the chisel, is kept free from water by any of the suggested means. This apparatus is effective in breaking rock under water of 40 or 50 feet in depth, and undoubtedly is capable of accomplishing what no other previous device had accomplished, or could accomplish. Considerable effort was made during the cross-examination of complainant's expert, and also by counsel at the argument, to segregate and belittle the elements of the combination in an effort to show that the apparatus as a whole disclosed no invention. This method is not altogether fair, in that it is an obvious attempt to pick to pieces and destroy in detail a device admittedly made up of several elements, some of them undoubtedly old, which the patentee intended to be used only in combination. A comparatively simple mechanical device like this does not require any extended explanation by an expert, and, except as affected by the prior art, should be left to speak for itself. The patent in suit is meritorious, inventive, and not anticipated, and will not be invalidated because the answers of an expert witness may not at all times be clear and full, or because they fail to meet the exacting demands of opposing counsel, as the case may be.

Reference has already been made to the Coffey patent of 1900, and its patentee, a competent mechanical engineer, was a leading witness for the defense herein. He claims that the idea of a detached

chisel working through the bottom of a tube or caisson occurred to him as early as 1899, and that he talked to various persons concerning it, two or three of whom have appeared as witnesses in the case. Assuming this to be so, still it is evident that the idea never took practical form, and if he had conceived it at the time when he filed his application, which was May 20, 1900, it seems strange that it was not embodied therein. He admits, however, that it was not, and that the caisson or tube was the only contribution to the art that he thereby made. But that is not all, for on October 24, 1905, he filed another application for a subaqueous rock-breaker on which he received, August 3, 1909, patent No. 929,832. In the specification of this patent he says:

"The objects of this invention are to remedy certain defects revealed by practical operation and use, in the rock-breaker described and claimed in my patent No. 657,515, dated September 11, 1900. These defects are twofold: First, when the heavily weighted chisel strikes the rock, a violent side blow is delivered to the tubular caisson, crystalizing same and in time causing breakage. Second, in certain varieties of rock a fine sand is formed by the impact of the chisel, which works up in the caisson and clogs the action of the chisel, thus reducing the force of the blow delivered, and hence the efficiency of the machine. To overcome these defects, I separate the weight and the chisel (combined in my former patent), allow the chisel to move freely through the bottom of the caisson, adapt the weight to drop through the caisson and strike the chisel, and so transmit the impact of the falling weight to the rock, through the stationary chisel, instead of directly, as in the former case."

When Coffey's application for his last-mentioned patent came into the Patent Office, an interference was declared between it and Rowland's application, then pending, for his original patent No. 907,407, of which the patent in suit is a reissue. Coffey then claimed to have conceived the invention and disclosed it in the early part of 1899, and Rowland that he had conceived it in October 1902, and disclosed it in May, 1903. Neither party, however, claimed to have reduced the invention to practice prior to the filing of his application. The examiner of interferences awarded priority of invention to Rowland. Coffey thereupon appealed to the examiners in chief, who affirmed the decision of the examiner of interferences. Coffey then appealed from the decision of the examiners in chief to the Commissioner of Patents, who, after a hearing, affirmed the decision of the examiners in chief. No appeal from his decision appears to have been taken to the Court of Appeals of the district. Some question has been made as to the narrowness of the issue before the Commissioner, but of this he says that:

"Even if the examiners in chief put too limited a construction on the issue, Coffey is not entitled to an award of priority."

What the Commissioner says as to the prior art is also instructive and may well be given at this point:

"Prior to the time when Coffey claims to have made this invention, two types of subaqueous rock-breakers had been employed. In the one a heavily weighted chisel was dropped through the water upon the rock; in the other a chisel rested on the rock, its upper end projecting above the water, and a weight or hammer was dropped thereon."

Reference has already been made to Coffey's reissued patent No. 12,501. That reissue was obtained upon an application verified by him, which contained, among other things, the following:

"I do verily believe myself to be the original and first inventor of the improvements set forth and claimed in the foregoing specification, and for which improvements I solicit a patent. I do not know and do not believe that said improvements were ever known or used before my invention thereof. * * * I can say that the public has acquiesced in my former understanding of the patent, because the public has never entered the field. In spite of the fact that the invention has proved commercially valuable, no one has entered into competition with me or my assigns in the use of the invention covered in this application for reissue; and, so far as I know, no one has spent even a dollar towards the practical use or the advancement of the art in the direction of my invention. There are and have been, as I fully believe, no intervening rights, which would be recognized in favor of others. The existing restrictions in the said original patent are not due to acquiescence by me or my solicitor in any rejections by the Patent Office during the prosecution therefor. I know of no reason why the defects and insufficiencies sought by me to be corrected by reissue should not be so corrected, nor any prejudice thereby to others."

Application for such reissue was filed May 14, 1906, and under it matter was introduced into the patent issued thereon, which was evidently intended to cover, and which perhaps did, the independent chisel head of the patent in suit; but in view of the fact that Coffey admits in the record herein that Rowland had, in the month of April immediately preceding, disclosed to Coffey the construction shown in Rowland's application filed September 3, 1903, and had told him that such application was then pending, he can gain no advantage over Rowland by his reissued patent. His verified application therefor was, under the circumstances, boldly and flagrantly disingenuous and serves only to disparage his credibility.

Moreover, it should be added, in this connection, that on January 13, 1903, Coffey filed still another application for a patent for a subaqueous rock-breaker, which did not, however, disclose the pertinent and essential features of the patent in suit. His failure to do so is remarkable, in view of his claim, made in the interference proceeding, and still adhered to, that he conceived the invention in suit in 1899.

As already intimated, a renewed attempt to show priority of invention on the part of Coffey appears in this record, but there is nothing therein which leads to a conclusion different from that reached by the three several classes of officials, in the Patent Office. Indeed, the circumstances of the case of themselves are sufficient to overthrow any testimony looking in that direction.

In view of what has been said as to the repeated but unsuccessful efforts of several persons, but particularly of one who is an experienced mechanical engineer, and evidently acquainted with the subaqueous rock-breaking art, to produce the invention of Rowland, it is manifest that the strongly urged contention of counsel in behalf of the defendants, that the patent in suit discloses nothing of novelty or invention, cannot prevail.

As already stated, infringement is practically admitted, and no argument to the contrary was made at the hearing. An examination of

the evidence pertinent thereto has, however, been made, and such examination discloses that the device of the defendants infringes the claims in issue.

A decree of that effect will be entered against the defendants Submarine Company and Edward Burhorn. As against the other defendants, I do not find sufficient evidence to warrant a decree in favor of the complainant. As to them, therefore, the bill will be dismissed.